GARY M. RESTAINO
United States Attorney
District of Arizona

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
ANDREW A. SMITH (NM Bar No. 8341)
Senior Trial Attorney
Natural Resources Section
c/o United States Attorney's Office
201 Third Street N.W., Suite 900
P.O. Box 607
Albuquerque, New Mexico 87103
Phone: (505) 224-1468
andrew.smith@usdoj.gov

*Attorneys for Plaintiff (additional counsel on signature page)*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America,** | ) |
| | ) |
| | ) No. |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **COMPLAINT** |
| **Douglas A. Ducey, in his official capacity as** | ) |
| **Governor of the State of Arizona; the State** | ) |
| **of Arizona; Arizona Department of** | ) |
| **Emergency and Military Affairs; Kerry L.** | ) |
| **Muehlenbeck, in her official capacity as** | ) |
| **Adjutant General, Arizona Department of** | ) |
| **Emergency and Military Affairs; and Allen** | ) |
| **Clark, in his official capacity as Director of** | ) |
| **the Arizona Division of Emergency** | ) |
| **Management, Arizona Department of** | ) |
| **Emergency and Military Affairs,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff the United States of America, through its undersigned attorneys and by the authority of the Attorney General, brings this civil action against Defendants Douglas A. Ducey, in his official capacity as Governor of Arizona; the State of Arizona; the Arizona Department of Emergency and Military Affairs ("AZDEMA"); Maj. Gen. Kerry L. Muehlenbeck, in her official capacity as Adjutant General, AZDEMA; and Allen Clark, in his official capacity as Director of the Arizona Division of Emergency Management, AZDEMA (collectively, "Arizona"), and allege as follows:

## INTRODUCTION

1.      The United States owns and manages lands on the Arizona-Mexico border under the plenary authority granted by Article IV, Section 3, Clause 2 of the U.S. Constitution (Property Clause).  Those lands can be used or occupied only with permission from the United States through the issuance of permits or other authority under federal law.  Under the Supremacy Clause of the U.S. Constitution, Article VI, Clause 2, the United States' sovereign constitutional rights in its properties are paramount to the sovereign interests of the States, and any law or other action by a State that interferes with the United States' paramount sovereign property rights is invalid, violates the U.S. Constitution, and must yield.

2.      The State of Arizona, acting through AZDEMA pursuant to an executive order from the Governor of Arizona, has entered and occupied lands owned by the United States and managed by the U.S. Bureau of Reclamation, an agency of the U.S. Department of the Interior, and the U.S. Forest Service, an agency of the U.S. Department of Agriculture, without obtaining the required permits or authorization.  In particular, Arizona has entered Reclamation and Forest Service lands along the Arizona-Mexico border and installed—and continues to install—hundreds of double-stacked multi-ton shipping containers that damage federal lands, threaten public safety, and impede the ability of federal agencies and officials, including law enforcement personnel, to perform their official duties.

3.      Officials from Reclamation and the Forest Service have notified Arizona that it is trespassing on federal lands.  Not only has Arizona refused to halt its trespasses and remove the

shipping containers from federal lands, but it has indicated that it will continue to trespass on federal lands and install additional shipping containers.  As a result, the United States brings this action to obtain appropriate relief for Arizona's unlawful continuing trespasses and invasions of the United States' paramount sovereign property rights and interests under the U.S. Constitution.  This action seeks injunctive relief prohibiting Arizona from continuing to trespass on federal lands and violating and infringing on the United States' constitutional rights and interests; halting ongoing installation and related activities; requiring the removal of previously installed shipping containers and all other associated materials, equipment, and vehicles; and requiring remediation of the environmental harm caused by Arizona's unlawful actions.  This action also seeks damages for Arizona's trespasses, to compensate the United States for any actions it needs to take to undo Arizona's actions and to remediate—to the extent possible—any injuries to the United States' properties and interests.

## PARTIES

4.     Plaintiff is the United States of America, acting through the United States Department of Agriculture and the United States Department of the Interior.

5.     Defendant State of Arizona is a State of the United States.  The State of Arizona includes all of its officers, employees, and agents in their official capacity.

6.     Defendant Douglas A. Ducey is the current Governor of the State of Arizona and is sued in his official capacity.

7.     Defendants AZDEMA is an agency of the State of Arizona established under A.R.S. 26-101.

8.     Defendant Maj. Gen. Kerry L. Muehlenbeck is the Adjutant General of AZDEMA and is sued in her official capacity.

9.     Defendant Allen Clark is the Director of the Arizona Division of Emergency Management within AZDEMA and is sued in his official capacity.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction under 28 U.S.C. § 1345 (United States as plaintiff), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief).

11.     Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b)(1)-(2) because Defendants reside within this judicial district, a substantial part of the acts or omissions giving rise to this action arose from events occurring within this judicial district, and the federal lands at issue are situated in this judicial district.

## LEGAL BACKGROUND
### The Property Clause

12.     The Property Clause provides that "Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. The United States holds federal public land "as trustee for the people of the United States" and is entitled to "maintain its possession and to prosecute trespassers." *Camfield v. United States*, 167 U.S. 518, 524 (1897). Congress' power under the Property Clause to enact legislation pertaining to federal public lands administered by the federal land management agencies is exclusive and without limitation. *Alabama v. Texas*, 347 U.S. 272, 273 (1954) (per curiam). Stated differently, "the Property Clause gives Congress plenary power to legislate the use of . . . federal land." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987).

13.     Congress has exercised its plenary power over federal land to, among other things, authorize and charge the Forest Service with administering and protecting National Forest System lands and Reclamation with administering and protecting lands within its jurisdiction and control.

### The Supremacy Clause

14.     The Supremacy Clause of the U.S. Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . .

shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2.  In conjunction with the Property Clause, the Supremacy Clause dictates that any State laws or actions that conflict with Congress's exercise of its authority over federal public lands are unconstitutional and must yield.

**National Forest System Lands**

15.    National Forest System lands include "all national forest lands reserved or withdrawn from the public domain of the United States."  16 U.S.C. § 1609(a).  Congress instructed the Forest Service to manage the "occupancy and use" of those lands under "rules and regulations . . . as will insure the objects of such reservations."  *Id.* § 551.

16.    To do this, the Forest Service has issued detailed regulations under which "[a]ll uses of National Forest System lands, improvements, and resources" are designated "special uses."  36 C.F.R. § 251.50(a). Without a special use authorization (or other applicable permission), Forest Service regulations prohibit, among other things:

- "Use or occupancy of National Forest System land or facilities," *id.* § 261.10(k);
- "Constructing, placing, or maintaining any kind of road, trail, structure, fence, enclosure, communication equipment, significant surface disturbance, or other improvement on National Forest System lands or facilities," *id.* § 261.10(a);
- "Abandoning any personal property," *id.* § 261.10(e);
- "Placing a vehicle or other object in such a manner that it is an impediment or hazard to the safety or convenience of any person," *id.* § 261.10(f);
- "Damaging and leaving in a damaged condition any such road, trail, or segment thereof," *id.* § 261.12(c);
- "Blocking, restricting, or otherwise interfering with the use of a road, trail, or gate," *id.* § 261.12(d);

- "Cutting or otherwise damaging any timber, tree, or other forest product, except as authorized by a special-use authorization, timber sale contract, or Federal law or regulation," *id.* § 261.6(a);

- Damaging or removing "any natural feature or other property of the United States," *id.* § 261.9(a)-(b); and

- Operating any vehicle off National Forest System, State, or County roads in "a manner which damages or unreasonably disturbs the land, wildlife, or vegetative resources," *id.* § 261.15(h).

**Bureau of Reclamation Lands**

17.     Reclamation is responsible for protecting federal lands under its authority and control by regulating the occupancy and use of those lands.  The Secretary of the Interior has discretion to "grant leases and licenses for periods not to exceed fifty years, and easements or rights-of-way with or without limitation as to period of time affecting lands or interest in lands withdrawn or acquired and being administered under the Federal reclamation laws in connection with the construction or operation and maintenance of any project."  43 U.S.C. § 387.  In exercising this discretion, Congress expressly charged Reclamation with protecting the United States' interests:  "Such permits or grants shall be made only when, in the judgment of the Secretary, their exercise will not be incompatible with the purposes for which the lands or interests in lands are being administered, and shall be on such terms and conditions as in [the Secretary's] judgment will adequately protect the interests of the United States and the project for which said lands or interests in lands are being administered."  *Id.*

18.     To do this, Reclamation issued regulations requiring prospective users of Reclamation lands to apply for use permits.  "[A]ny possession or occupancy of any portion of, and the extraction or disturbance of any natural resources from Reclamation land, facilities, or waterbodies are prohibited without written authorization from Reclamation, unless excepted as listed in § 429.4."  43 C.F.R. § 429.1; *see also id.* § 429.3 ("Possession or occupancy of . . .

Reclamation land, facilities, or waterbodies [including through the construction of linear infrastructure] require a use authorization in accordance with this part.").

19.     In reviewing an application for an occupancy and use authorization, "Reclamation will consider . . . (a) Compatibility with authorized project purposes, project operations, safety, and security; (b) Environmental compliance; (c) Compatibility with public interests; (d) Conflicts with Federal policies and initiatives; (e) Public health and safety; (f) Availability of other reasonable alternatives; and (g) Best interests of the United States." *Id.* § 429.14.

20.     The "unauthorized use of Reclamation land, facilities, or waterbodies is a trespass against the United States." *Id.* § 429.33(g).  Under Reclamation's regulations, trespass includes "[u]nauthorized possession or occupancy of Reclamation facilities, lands, or waterbodies," and "[u]nauthorized dumping or abandonment of personal property on Reclamation facilities, lands, or waterbodies." *Id.* § 423.24.

### Department of Homeland Security

21.     Congress delegated to the Department of Homeland Security "the power and duty to control and guard the boundaries and borders of the United States against the illegal entry of aliens."  8 U.S.C. § 1103(a)(5).

22.     In furtherance of this authority, Congress in the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), among other things, authorized the Secretary of the Department of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads . . . in the vicinity of the United States border."  IIRIRA § 102 (codified as amended at 8 U.S.C. § 1103 note).  Congress also gave the Secretary the discretion to decide how, when, and where to construct barriers.  *See* IIRIRA § 102(b)(1)(D).

### International Boundary and Water Commission

23.     The United States Section of the International Boundary and Water Commission ("USIBWC") was established to implement treaties between the United States and Mexico. One of the USIBWC's several obligations on the border is to monitor water sharing with

Mexico in accordance with a 1944 Treaty between the United States and Mexico called the "Utilization of Waters of the Colorado and Tijuana and of the Rio Grande." To implement that obligation, USIBWC maintains gauging stations used to measure water levels in the adjacent Colorado River that it accesses both through Reclamation lands and over an easement.

## FACTUAL BACKGROUND

### The United States' Acquisition of Lands

24.     The area now comprising the State of Arizona was acquired by the United States through the Treaty of Guadalupe Hidalgo in 1848, as modified by the 1853 Gadsden Purchase, and the 1854 Treaty of Mesilla, which affirmed the Gadsden Purchase.

25.     The 1854 Treaty of Mesilla modified the border set forth in Article 5 of the 1848 Treaty to conform to the border described in Article 1 of the 1854 Treaty. This resulted in the United States becoming the owner of the land north of the border with Mexico encompassed in the Gadsden Purchase, subject only to reservations of certain specified private land grants consistent with the 1848 and 1854 Treaties.

26.     Since that time, the United States has exercised its sovereign and proprietary rights over this property, including transferring specific lands to Arizona and private individuals and reserving other lands for various purposes. The United States has also re-acquired other lands that it had previously disposed of.

### Coronado National Forest

27.     The Coronado National Forest is a unit of the National Forest System in Arizona that borders Mexico. The Forest consists of lands that were originally reserved under 16 U.S.C. § 471 [repealed by P.L. 94-679, October 21, 1976] as the Huachuca Forest Reserve in 1906, which was later consolidated into the Garces National Forest in 1908. The Garces National Forest was then consolidated into the Coronado National Forest in 1911.

28.     The property comprising the Coronado National Forest is National Forest System land owned by the United States and administered by the U.S. Secretary of Agriculture acting through the Forest Service.

**Reclamation Lands**

29.     As relevant here, Reclamation manages certain lands owned by the United States along or near the Arizona-Mexico border that were withdrawn from the public domain or acquired at different times under the Reclamation Act of 1902, which authorized the Secretary of the Interior to withdraw lands from public entry that were required for any irrigation works under the Act and to acquire lands by purchase or condemnation where necessary.  Reclamation Act, 32 Stat. 388, §§ 3, 7 (1902).

30.     In 1904, the Secretary authorized the withdrawal and purchase of lands for the Yuma Project to irrigate lands with water from the Colorado River.

31.     In 1927, Congress authorized the Secretary to acquire lands for the Colorado River Front Work and Levee System—intended to control floods, improve navigation, and regulate the flow of the Colorado River—consistent with the authorization in the Reclamation Act of 1902.

32.     As part of the Colorado River Front Work and Levee System, Reclamation also obtained an easement over certain lands along the Arizona-Mexico border within the Cocopah Indian Reservation.

**Roosevelt Reservation**

33.     In 1907, President Theodore Roosevelt issued a proclamation known as the "Roosevelt Reservation," declaring that it was "necessary for the public welfare that a strip of land lying along the boundary line between the United States and the Republic of Mexico be reserved from the operation of public land laws and kept free from obstruction" to protect against the smuggling of goods between Mexico and the United States.  35 Stat. 2136.

34.     To do this, the President "reserved from entry, settlement or other form of appropriation under the public land laws and set apart as a public reservation, all public lands

within sixty feet of the international boundary between the United States and the Republic of Mexico, within the State of California and the Territories of Arizona and New Mexico." *Id.*

35.     The Roosevelt Reservation applied only to public lands (i.e., those lands owned by the United States).  The Reservation excluded lands (1) already legally claimed or covered by a properly recorded right of way, (2) "upon which any valid settlement has been made pursuant to law, and the statutory period within which to make entry or filing of record ha[d] not expired," and (3) that were "embraced within any withdrawal or reservation for any use or purpose to which th[e] reservation for customs purposes [was] repugnant." *Id.*

**Arizona Statehood**

36.     Three years after the Roosevelt Reservation, in 1910, Congress exercised its authority under Article IV, Section 3 of the U.S. Constitution to "dispose of and make all needful rules and regulations respecting the territory or other property of the United States," and to admit new states to the union, by passing an enabling statute with conditions that, if met, would allow Arizona to become a state.

37.     One of those conditions required that "[t]he people inhabiting said proposed State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof . . . ." 36 Stat. 557, 569 (1910).

38.     Arizona adopted a constitution with this disclaimer, Ariz. Const. Art. XX, sec. 4, and was admitted to the union in 1912, 37 Stat. 1728 (1912).

**Arizona's Trespasses**

39.     The Department of Homeland Security has exercised its authority under IIRIRA § 102 to install certain sections of physical barriers, including pedestrian and vehicle barrier, along the border with Arizona and Mexico where it is most practical and effective.  The pedestrian barrier is not contiguous.  There are areas along the border where there are gaps in the pedestrian barrier or where vehicle barrier exists rather than pedestrian barrier.

40.     Governor Ducey purported to declare an emergency under Arizona Revised Statutes § 26-303(d) on April 20, 2021, asserting that "soon after January 20, 2021, as a result

of a new Presidential administration's anticipated policy changes regarding immigration, foreign nationals began entering the United States at substantially higher rates through both legal and illegal means."

41.    Following the State legislature's appropriation of $335 million for Fiscal Year 2023 (available July 1, 2022) for border security measures, Governor Ducey issued Executive Order 2022-04 on August 12, 2022.

42.    Executive Order 2022-04 ordered AZDEMA to "immediately initiate operations to close the gaps in Arizona's southern border wall, regardless of location," and to "work with other Arizona state agencies, local authorities, private organizations and, to the extent possible, federal agencies to accomplish this mission as quickly as possible."

*Interference with Reclamation's Easement and Trespasses on Reclamation Lands*

43.    In August 2022, without federal authorization, Arizona, or individuals acting under Arizona's authority or control, placed approximately 42 shipping containers on Reclamation's easement acquired under the Colorado River Front Work and Levee System within the exterior boundaries of the Cocopah Indian Tribe's West Reservation within portions of Section 11, Township 10 South, Range 25 West, Gila-Salt River Meridian, Arizona.  Those shipping containers remain in place.  None of the shipping containers are within the boundaries of the Roosevelt Reservation.  Arizona has no property interests in the land on which the shipping containers were placed.

44.    In August 2022, without federal authorization, Arizona, or individuals acting under Arizona's authority or control, placed an additional 80 containers on Reclamation lands withdrawn and acquired pursuant to the Yuma Project and the Colorado River Front Work and Levee System and located between four gaps in existing border wall in Yuma County, Arizona within portions of Section 35, Township 16 South, Range 21 East, San Bernardino Meridian, Arizona; and Section 28, Township 8 South, Range 24 West, Gila-Salt River Meridian, Arizona.  Those shipping containers remain in place.  None of the shipping containers are

within the boundaries of the Roosevelt Reservation.  Arizona has no property interests in the land on which the shipping containers were placed.

45.     Reclamation's Regional Director notified AZDEMA in a letter dated October 13, 2022, that the "unauthorized placement of those containers constitutes a violation of federal law and is a trespass against the United States," which is "harming federal lands and resources and impeding Reclamation's ability to perform its mission."

*Trespasses on National Forest System Lands*

46.     In mid-September 2022, an AZDEMA employee contacted Forest Service personnel, indicating that AZDEMA was "looking to get approval from [the] Coronado National Forest to place barriers on National Forest land in all areas that currently have gaps in the federal wall."

47.     The Forest Service advised Arizona that it needed to obtain authorization for such use through the federal regulatory process governing the use and occupancy of National Forest System lands.  Arizona did not do so.

48.     On October 5, 2022, Forest Service personnel observed around fifteen shipping containers and associated construction equipment at a staging area just north of the international border on the Coronado National Forest in Cochise County, located approximately in the West 700 feet of the South 250 feet of Lot 2 of Section 22 of Township 24 South, Range 20 East, Gila and Salt River Meridian.

49.     The Forest Supervisor for the Coronado National Forest sent a letter to Arizona two days later, advising Arizona again on the process for obtaining a permit and asking that Arizona "refrain from any further activity associated with the containers on [National Forest System] lands, including the use of any equipment, until such time as a proper authorization is secured."

50.     Arizona notified the Forest Service that same day that it would continue the work on National Forest System lands without seeking a permit.

51.     On October 8, 2022, the Regional Forester for the Southwestern Region of the U.S. Forest Service, sent a letter to AZDEMA stating that "there is a regulatory approval process that governs the use and occupancy of National Forest System lands to allow the Forest Service to fulfill its federal land management obligations under federal law."  The letter further noted that Arizona had "not pursued that process," and that "all state activities on National Forest land related to the shipping container project are occurring without the permits and authorization required."

52.     AZDEMA and its agents have continued to work on National Forest System lands without the permits and authorization required, with hundreds of shipping containers placed along the border on National Forest System lands for approximately four miles as of December 8, 2022.  Arizona also graded and cleared of vegetation at least two staging areas on National Forest System lands as part of this work.  Arizona has indicated that it will place additional shipping containers for approximately six more miles on National Forest System lands.

53.     The National Forest System lands along which Arizona has placed, or caused to be placed, shipping containers are owned by the United States and located in Sections 21, 22, and 23 of Township 24 South, Range 20 East, Gila and Salt River Meridian.  That land was obtained by the United States in the Gadsden Purchase and reserved as a Forest Reserve in 1906 under 16 U.S.C. § 471, and made part of the Coronado National Forest in 1912.  Most of the shipping containers are within the boundaries of the Roosevelt Reservation but some are outside of that boundary.  The staging areas are outside of the boundaries of the Roosevelt Reservation.  Arizona has no property interests in the land on which the shipping containers were placed or in the land where the staging areas are located.

**Harm from Arizona's Trespasses**

54.     The shipping containers on Reclamation's easement on the Cocopah Indian Tribe's West Reservation have reduced the top width of the levee, constraining Reclamation's operations and maintenance activities and limiting its ability to inspect and access the levee's

embankment.  The shipping containers also present a safety risk, as one or more of them has shifted during a storm event and at least one fell into a concrete-lined canal that conveys water to Mexico.  Similarly, the shipping containers on other Reclamation lands are interfering with the agency's ability to access, operate, and maintain its facilities and pose a threat to those facilities.

55.     In installing shipping containers on National Forest System lands, Arizona has widened roads and cleared lands for staging areas.  In doing so, Arizona has cut down or removed scores of trees, clogged drainages, and degraded the habitat of species listed under the Endangered Species Act.  The shipping containers are blocking approximately thirty naturally occurring ephemeral watercourses, which will interrupt natural watershed patterns, erode soil in the immediate area, and damage vegetation and forage.  Arizona has also prevented public access to National Forest System lands and interfered with the Forest Service's ability to carry out its official duties by, among other things, causing the National Forest System lands to be occupied by armed private security guards and blocking access to National Forest System roads.

56.     Arizona's installation of shipping containers along the border on federal public lands is also detrimentally affecting law enforcement functions.  Arizona's installation activities have substantially curtailed the Forest Service's ability to freely access the border area, and the installation of the containers could impede access to crime scenes or to investigating criminal activity originating on the other side of the containers, including drug trafficking.  Further, when responding to incidents in the area, the containers could compromise the safety of law enforcement by blocking visibility, preventing the assessment of threats on the other side of the border, and giving the observational advantage to armed scouts for transnational criminal organizations.  The shipping containers can feasibly be entered on the ends or by cutting access points into the containers, allowing for the concealment of individuals, weapons, or contraband, effectively creating a fortified bunker that would pose a grave threat to unsuspecting Forest

Service personnel and the public.  This situation is inherently dangerous and inconsistent with the purpose of the Roosevelt Reservation.

57.     Arizona's shipping containers are also interfering with the ability of Customs and Border Protection to close four gaps in existing border barrier with engineered barriers that include important design standards and requirements, such as allowing for visibility through the barriers, preventing perching on the barriers, and creating access through the barrier for emergency vehicles and other authorized parties.  Customs and Border Protection has awarded contracts for the construction of such barriers.  Unless removed, the shipping containers installed by Arizona will result in these construction activities being paused or suspended.

58.     The shipping containers on the USIBWC's easement are interfering with that agency's ability to carry out its official duties.

59.     Arizona's trespasses also invade the United States' paramount sovereign property interests under the Property Clause and conflict with Congress' laws governing the United States' properties.  Arizona's actions thus violate the Supremacy Clause and harm the United States' constitutional rights and interests.

## CLAIMS FOR RELIEF

### Count I – Trespass

60.     The United States incorporates its previous allegations as though fully set forth herein.

61.     Arizona has installed and is installing shipping containers along the Arizona-Mexico border on lands owned by the United States without obtaining the required federal permits or other authorization.

62.     Arizona is in trespass on these lands in violation of applicable statutes and regulations, including those set forth in paragraphs 15 to 20.

63.     The United States is entitled to a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Arizona's use and occupancy of lands owned by the United States without the required permits or other authorizations are trespasses.

64.     The United States is entitled to injunctive relief prohibiting Arizona's continuing trespasses; prohibiting any future trespasses and ongoing installation activities; requiring immediate removal of the shipping containers, under the federal agencies' direction to minimize further harms to the United States; and requiring remediation of the harm caused by their installation.

65.     The United States is entitled to an award of damages resulting from Arizona's trespasses.

### Count II – Ejectment

66.     The United States incorporates its previous allegations as though fully set forth herein.

67.     At all times material to this Complaint, the United States has held and holds legal title to and is legally entitled to possession of National Forest System lands and Reclamation lands on which Arizona has installed shipping containers along the Arizona-Mexico border.

68.     Arizona has unlawfully and without authority failed to remove the shipping containers from lands owned by the United States or over which the United States holds easements, thereby damaging the United States.

69.     The United States is entitled to an order of ejectment, removing Arizona and its property from the lands owned by the United States or over which the United States holds easements upon which Arizona has installed shipping containers.

### Count III – Interference with Easements

70.     The United States incorporates its previous allegations as though fully set forth herein.

71.     At all times material to this Complaint, the United States has held and holds an easement for Reclamation purposes over lands along the Arizona-Mexico border within the Cocopah Indian Reservation on which Arizona has installed shipping containers.

72.     At all times material to this Complaint, the United States, through the USIBWC, has held and holds an easement over lands along the Arizona-Mexico used to effectuate the USIBWC's treaty obligations.

73.     Arizona's installation of these shipping containers interferes with and encroaches on the United States' easements.

74.     The United States is entitled to a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Arizona's installation of shipping containers on lands within the Cocopah Indian Reservation over which the United States' holds an easement and lands on which the USIBWC holds an easement unlawfully interferes with those easements.

75.     The United States is entitled to injunctive relief prohibiting Arizona's continuing interference with and encroachment on the United States' easements, prohibiting any future interference and encroachment, and requiring immediate removal of the shipping containers and remediation of the harm caused by their installation.

76.     The United States is entitled to an award of damages resulting from Arizona's interference with and encroachment on the United States' easements.

### Count IV – Violations of U.S. Constitution

77.     The United States incorporates its previous allegations as though fully set forth herein.

78.     Arizona has installed and is installing shipping containers along the Arizona-Mexico border on lands owned by the United States without obtaining the required federal permits or other authorizations.  Arizona has taken these actions under Executive Order 2022-04.  As applied by Arizona, Executive Order 2022-04 and Arizona's actions in trespass on the United States' properties directly conflict with federal law, including the statutes and regulations set forth in paragraphs 15 to 20, and violate the Property Clause and Supremacy Clause of the U.S. Constitution.  U.S. Const. art. IV, § 3, cl. 2 (Property Clause); U.S. Const. art. VI, cl. 2 (Supremacy Clause)

79.     The United States is entitled to a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that application of Executive Order 2022-04 to purportedly authorize Arizona to trespass on lands owned by the United States or over which the United States holds easements violate the U.S. Constitution.

80.     The United States is entitled to a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that Arizona's trespasses under the putative authority of Executive Order 2022-04 on lands owned by the United States or over which the United States holds easements infringe on the United States' paramount sovereign property rights and violate the U.S. Constitution.

81.     The United States is entitled to injunctive relief prohibiting Arizona's continuing infringement on the United States' paramount sovereign property rights and violations of the U.S. Constitution, prohibiting any future trespasses and ongoing installation activities, and requiring immediate removal of the shipping containers and remediation of the harm caused by their installation.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

A.     A declaration that Arizona's use and occupancy of lands owned by the United States without the required permits or other authorization constitutes unlawful trespasses;

B.     An award of damages for Arizona's unlawful trespasses, including any costs and expenses incurred by the United States in removing Arizona's containers and associated materials and in remediating the sites to their prior condition, to the extent possible;

C.     A writ of ejectment and such other appropriate writs and orders providing for the removal of Arizona's shipping containers and any associated property or equipment from lands owned by the United States along the Arizona-Mexico border;

D.     A declaration that Arizona's installation of shipping containers on lands within the Cocopah Indian Reservation over which the United States holds an easement unlawfully interferes with and encroaches on that easement;

COMPLAINT OF THE UNITED STATES OF AMERICA                                    17

E.      A declaration that Arizona's installation of shipping containers on lands over which the United States, through the USIBWC, holds an easement unlawfully interferes with and encroaches on that easement;

F.      An award of damages for Arizona's unlawful interference with the United States' easements, including any costs and expenses incurred by the United States in removing Arizona's containers and associated materials and in remediating the sites to their prior condition;

G.      A declaration that Executive Order 2022-04 violates the U.S. Constitution as applied to Arizona's occupancy and use of lands owned by the United States without the required permits or other authorizations;

H.      A declaration that Arizona's use and occupancy of lands owned by the United States without the required permits or other authorization infringes on the United States' paramount sovereign property interests, conflicts with and violates federal laws and regulations, and is pre-empted by and violates the U.S. Constitution.

I.      A preliminary and permanent injunction requiring Arizona to cease installing shipping containers and all related installation activities on lands owned by the United States along the Arizona-Mexico border; to cease the continuing trespasses and violations of the U.S. Constitution by removing all shipping containers Arizona previously installed on lands owned by the United States, under the federal agencies' direction to minimize further harms to the United States; and to remediate any and all harm to the lands owned by the United States caused by Arizona's installation of shipping containers;

J.      A permanent injunction enjoining Arizona from using or occupying lands owned by the United States along the Arizona-Mexico border without the required federal permits or other authorizations;

K.      A preliminary and permanent injunction requiring Arizona to remove all shipping containers installed on lands within the Cocopah Indian Reservation over which the United States holds an easement' under the federal agencies' direction to minimize further harms to the

COMPLAINT OF THE UNITED STATES OF AMERICA                                          18

United States, and remediation of any and all harm caused by Arizona's installation of those shipping containers;

  L. A permanent injunction enjoining Arizona from interfering with the United States' easement on lands within the Cocopah Indian Reservation;

  M. A preliminary and permanent injunction requiring Arizona to remove all shipping containers installed on lands over which the United States, through the USIBWC, holds an easement, under the federal agencies' direction to minimize further harms to the United States, and remediation of any and all harm caused by Arizona's installation of those shipping containers;

  N. A permanent injunction enjoining Arizona from interfering with the easement that the United States holds through the USIBWC;

  O. An award to the United States of costs in this action; and

  P. Any other relief the Court deems just and proper.


Respectfully submitted this 14th day of December, 2022,


        GARY M. RESTAINO
        United States Attorney
        District of Arizona


        TODD KIM
        Assistant Attorney General
        Environment & Natural Resources Division
        United States Department of Justice

        */s/ Shaun M. Pettigrew*
        SHAUN M. PETTIGREW
        (Calif. Bar No. 254564)
        Senior Trial Attorney
        Natural Resources Section
        c/o NOAA, Damage Assessment
        7600 Sand Point Way, NE

Seattle, Washington 98155
Phone: (206) 526-6881
shaun.pettigrew@usdoj.gov

ANDREW A. SMITH
(NM Bar No. 8341)
Senior Trial Attorney
Natural Resources Section
c/o United States Attorney's Office
201 Third Street, N.W., Suite 900
P.O. Box 607
Albuquerque, New Mexico 87103
Phone: (505) 224 1468
andrew.smith@usdoj.gov

TYLER M. ALEXANDER
(Calif. Bar No. 313188)
Trial Attorney
Natural Resources Section
PO Box 7611
Washington, DC 20044-7611
Phone: (202) 305-0238
tyler.alexander@usdoj.gov

*Attorneys for Plaintiff*